UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL HICKEY, individually, and as parent and natural guardian of O. H., infant, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC.,<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**Civil Action No.** 1:16-cv-394 (GLS/DJS) |

Plaintiff, by and through his attorneys, as and for his complaint against Defendants, allege as follows:

### PARTIES

1. Plaintiff Michael Hickey, ("Plaintiff") is a citizen and resident of Hoosick Falls, New York, with a mailing zip code of 12090. Plaintiff is a homeowner who obtains his water from the public water supply of the Village of Hoosick Falls, New York.

2. Infant Plaintiff O. H., ("Infant Plaintiff") is an infant less than fourteen (14) years of age and child of Plaintiff residing with his father in Hoosick Falls, New York, and obtaining his water from the public water supply of the Village of Hoosick Falls, New York.

3. Defendant Saint-Gobain Performance Plastics Corp. ("Saint-Gobain") is a foreign corporation with its principal place of business in Valley Forge, Pennsylvania.

4. Defendant Honeywell International Inc. ("Honeywell"), f/k/a Allied-Signal

1

Inc., is a foreign corporation with its principal place of business in Morris Plains, New Jersey.

5. In 1999, Allied-Signal Inc. acquired Honeywell. The combined company adopted Honeywell's name.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff classes are citizens of states different from at least some of Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

7. Venue is proper in this Court under 28 U.S.C. § 1391(a) because Defendant Saint-Gobain conducts substantial business in this District, has caused harm to Class Members residing in this District, and Plaintiff resides in this District.

## FACTUAL ALLEGATIONS

8. Between 1956 and the present, Defendants, or entities purchased by Defendants for which Defendants have legal liability, operated a facility located at 14 McCaffrey Street in the Village of Hoosick Falls, New York ("McCaffrey Street Facility").

9. Upon information and belief, in or about 1967 Oak Materials Group, Inc. purchased the assets and liabilities of Dodge Industries Inc., including the McCaffrey Street Facility.

10. Upon information and belief, in or about 1986 Defendant Honeywell, f/k/a Allied-Signal Inc. purchased Oak Materials Group, Inc. which included the assets and liabilities of the McCaffrey Street Facility and then operated the McCaffrey Street Facility until 1996.

11. Upon information and belief, in or about 1996 Defendant Honeywell (f/k/a

Allied-Signal Inc.) sold the assets and liabilities of the McCaffrey Street Facility to Furon Company.

12. Upon information and belief, in or about 1999 Defendant Saint-Gobain purchased the assets and liabilities of Furon Company, including the McCaffrey Street Facility.

13. Defendant Saint-Gobain has continuously owned and operated the McCaffrey Street Facility from the time it purchased the Furon Company to the present.

14. Upon information and belief, from 1956 through 2004, Defendants, or their predecessors in interest, utilized Perfluorooctanoic acid ("PFOA") in various manufacturing processes at the McCaffrey Street Facility.

15. PFOA was and is a hazardous substance and pollutant.

16. Throughout the course of their operation of the McCaffrey Street Facility, defendants, and their predecessors in interest, released PFOA into the environment within the meaning of Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 309, as amended, 42 U.S.C.A. § 9658. Such release caused contamination of the aquifer below the McCaffrey Street Facility which spread to the water from that aquifer used for the drinking water supply for the Village of Hoosick Falls.

17. Ingestion of PFOA through the drinking of contaminated water, from bathing in contaminated water and through inhalation of water vapor during showering and cooking causes this chemical to accumulate inside the human body and causes injury at the cellular and genetic levels.

18. As a result of their ingestion, absorption, inhalation and accumulation of PFOA inside their bodies, Plaintiff, Infant Plaintiff, and other class members similarly situated, have suffered a personal injury.

19. Once PFOA is ingested or absorbed into the human body, it is persistent, having a long half-life for removal, causing continuous damage at the cellular and genetic levels.

20. The injury caused by accumulation of PFOA inside the human body has been associated in the medical and scientific literature with the increased incidence of cancerous and non-cancerous conditions in humans and animals.

21. The Village of Hoosick Falls operates and maintains the municipal water supply system ("Village Water System").

22. The Village Water System has approximately 1,300 service connections. The Village provides water to nearly 95 percent of the Village's residents.

23. The Village Water System produced 147,227,010 gallons of water in 2014.

24. In or around 2007, Hoosick Falls completed the construction of a new production well to supply municipal water to many of the residents of Hoosick Falls that is located within approximately 500 yards of the McCaffrey Street Facility.

25. Upon information and belief, in June 2015, the Hoosick Falls Water Department conducted tests on the effluent from its production well(s) in order to discern whether PFOA contamination had occurred to the Village water supply.

26. The testing of the Village water supply produced detections of 612 parts per trillion (ppt) (0.612 ppb), 618 ppt, 620 ppt, 151 ppt and 662 ppt for PFOA.

27. The public was not advised of the results of these tests until November of 2015.

28. On November 25, 2015, the EPA recommended to the Village the use of an alternative drinking water source and that residents not use the municipal water for drinking and cooking.

29. On December 17, 2015, when the Village had not yet acted upon its prior recommendation the EPA repeated its recommendation that residents be advised not to drink water from the Village water supply and to seek some other source of potable water for Village residents.

30. Shortly after this date, Defendant Saint-Gobain began providing free bottled water to citizens of Hoosick Falls. Near this time, Saint-Gobain also agreed to fund the installation of a granulated activated carbon filter system on the municipal water system to remove PFOA from drinking water.

31. On January 14, 2016, Healthy Hoosick Water sponsored a public meeting with personnel from the EPA, the DOH, and New York State Department of Environmental Conservation (DEC).

32. At that meeting, New York officials announced that New York State had submitted a letter that day seeking the designation of Hoosick Falls as a federal Superfund site.

33. EPA officials acknowledged in that meeting that a Superfund designation would adversely impact the property values of the Village.

34. As a result of the presence of PFOA within the aquifer, the Village Water System and private wells, the property values within Hoosick Falls have experienced a significant decline.

35. The DEC wrote official letters to Defendants Saint-Gobain and Honeywell, f/k/a Allied-Signal on February 11, 2016, and identified the two companies as parties potentially responsible for PFOA contamination at one or more properties in Hoosick Falls, including the Saint-Gobain McCaffrey Street Site, No. 442046.

36. The DEC's letter to Defendants constituted a demand that each enter into an

enforceable Consent Order to characterize and investigate the extent of the contamination, to provide interim remedial measures to protect public health and drinking water supplies, to analyze alternatives for providing clean and safe drinking water and, ultimately, to design and implement a comprehensive clean-up and remediation at the McCaffrey Street Facility and any additional locations.

37. The letter further advised each company that "responsible parties are liable for the reimbursement of funds expended by the State of New York in taking responsive actions at sites where hazardous substances and/or wastes have been released."

## CLASS ACTION ALLEGATIONS

38. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

39. Plaintiff brings this lawsuit as a class action on his own behalf, on behalf of Infant Plaintiff, and on behalf of all other persons similarly situated as members of the proposed subclasses under Federal Rules of Civil Procedure 23(a), 23(b)(2), and (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

40. Plaintiff brings this class action on behalf of two subclasses, as set forth below:

> **Village Water Property Damage Subclass**
> All current owners of real property located in the Village of Hoosick Falls, New York and/or current owners of real property with a mailing zip code of 12090 or 12089, and who receive their drinking water from the Village Water Supply.
>
> **PFOA Accumulation Injury Subclass**
> All individuals who drank and bathed in water contaminated by PFOA originating from the McCaffrey Street Facility and have accumulated PFOA in their bodies but who have not been diagnosed with any specific disease or condition allegedly related

6

to PFOA exposure.

41. Excluded from the Village Water Property Damage Subclass ("Village Water Subclass") Class are: (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (b) the Judge to whom this case is assigned and the Judge's staff; (c) any class counsel or their immediate family members; and (d) any State or any of its agencies.

42. Excluded from the PFOA Accumulation Injury Subclass ("PFOA Accumulation Injury Subclass") Class are: (a) Any person who qualifies for the Village Water Property Damage Subclass; (b) Any person who has been diagnosed with an illness or condition allegedly caused by exposure to PFOA; (c) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (d) the Judge to whom this case is assigned and the Judge's staff; (e) any class counsel or their immediate family members; and (f) any State or any of its agencies.

43. Plaintiff reserves the right to amend the Village Water Subclass and/or the PFOA Accumulation Injury Subclass definitions if discovery and further investigation reveals that either Subclass should be expanded, divided into additional subclasses, or modified in any way.

44. Collectively, the Village Water Subclass and the PFOA Accumulation Injury Subclass are referred to as "the Subclasses."

## Numerosity

45. Although the exact number of class members is uncertain and can be ascertained only through appropriate discovery, the number is great enough such

that joinder is impracticable. The disposition of the claims of these class members in a single action will provide substantial benefit to all parties and to the Court.

46. Further, class members are readily identifiable from publically available information regarding property ownership and from the results of blood testing being offered by the New York State Department of Health to any current or former residents of Hoosick Falls and its vicinity that may have ingested, absorbed, or inhaled PFOA contaminated water.

### Typicality

47. Plaintiff's property damage claim is typical of the claims of the Village Water Subclass in that Plaintiff, like all class members, is an owner of real property that has experienced a diminution in value due to the actions of the Defendants in contaminating the Village Water System. The factual bases of Defendants' misconduct are common to all class members and represent a common thread of misconduct resulting in injury to all members of the Subclasses.

48. The Infant Plaintiff's claim for injury due to the accumulation of PFOA in his body is typical of the claims of the PFOA Accumulation Injury Subclass in that Infant Plaintiff, like all class members, ingested, absorbed, and inhaled PFOA into their bodies as a result of drinking, cooking with, and bathing in PFOA contaminated water from the Village Water System. The factual bases of Defendants' misconduct are common to all class members and represent a common thread of misconduct resulting in injury to all members of the Subclasses.

### Adequate Representation

49. Plaintiff will fairly and adequately represent and protect the interests of the Subclasses. Plaintiff has retained counsel with substantial experience litigating both

8

environmental torts and class actions, including actions, like this one, representing plaintiffs whose property has been devalued by the actions of a polluter or who have ingested, inhaled, and absorbed environmental contaminants into their bodies producing injury.

50. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Subclasses and have the financial resources to do so. Neither Plaintiff nor his counsel have interests adverse to either Subclass.

### Predominance of Common Questions

51. Plaintiff brings this action under Rule 23(b)(3) because there are numerous questions of law and fact common to Plaintiff, Infant Plaintiff, and the class members that predominate over any question affecting only individual class members. The answers to these common questions will advance resolution of the litigation as to all class members. These common legal and factual issues include, but are not limited to:

   a. Whether Defendants owed a duty to Plaintiff, Infant Plaintiff, and members of the Subclasses to refrain from conduct reasonably likely to cause contamination of class members' drinking water;

   b. Whether Defendants knew or should have known that it was unreasonably dangerous to dispose of PFOA-containing waste into the environment;

   c. Whether Defendants knew or should have known that disposing of PFOA-containing waste in the manner alleged herein was reasonably likely to cause contamination of class members' drinking water;

   d. Whether Defendants breached a legal duty to Plaintiff, Infant Plaintiff, and the Subclasses by disposing of PFOA-containing waste in the manner described herein;

9

e. Whether Defendants' breach of a legal duty caused class members' drinking water to become contaminated with PFOA;

f. Whether it was foreseeable that Defendants' release into the environment of PFOA-containing waste would cause class members' drinking water to become contaminated and/or unreasonably dangerous for normal and foreseeable human consumption or use;

g. Whether the PFOA contamination described herein caused, and continues to cause, a continuous invasion of the property rights of Plaintiff and members of the Property Damage Subclass;

h. Whether Defendants' contamination of the Village Water System and the drinking water supply caused the devaluation of Plaintiff's and subclass members' property;

i. Whether Defendants caused PFOA to enter, invade, intrude upon, or injure the property rights of Plaintiff and the Property Damage Subclass;

j. What increased risks of illness and harm the PFOA accumulation injury sustained by Plaintiff, Infant Plaintiff, and the Subclasses has caused;

k. What medical monitoring and surveillance is reasonable and necessary to assure early diagnosis and treatment of such illnesses and conditions; and

l. Whether Defendants' conduct warrants the imposition of punitive damages.

### Superiority

52. Plaintiff, Infant Plaintiff, and members of the Subclasses have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.

53. Absent a class action, some class members would likely find the cost of litigating their claims to be prohibitively high and, therefore, would have no effective remedy at law.

54. Class treatment of common questions of law and fact will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication. Class treatment will not only promote consistency of outcome, but will also spare Defendants being held to different standards of conduct.

55. Class treatment of a medical monitoring program is the most cost-effective method of ensuring that all affected individuals receive early diagnosis and treatment of illnesses caused by the injuries sustained through PFOA accumulation in their bodies.

### Rule 23(b)(2) Injunctive or Declaratory Relief

56. In addition or in the alternative to the above, Plaintiff brings this class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Subclasses, such that final injunctive relief or declaratory relief is appropriate with respect to each Subclass as a whole. Such injunctive relief includes, but is not limited to, an injunction to require preventative measures to limit the damage to class members' homes and personal property, the cleanup and mitigation of harm to class members' homes and personal property to the extent possible, including remediation of the aquifer upon which Plaintiff, Infant Plaintiff, and subclass members depend for their drinking water, and an order requiring Defendants to institute remedial measures sufficient to permanently prevent PFOAs from contaminating class members' drinking water and/or properties and requiring Defendants to fund a medical monitoring and surveillance program for all persons injured by PFOA

accumulation in their bodies.

57. Plaintiff and the Class also seek a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiff and members of the Subclasses.

### Rule 23(c)(4) Certification of Particular Issues

58. In the alternative to certification under Rule 23(b)(2) or 23(b)(3), Plaintiff and the Subclasses seek to maintain a class action with respect to particular issues under Rule 23(c)(4).

59. Specifically, the liability of each Defendant, or the Defendants jointly, is suitable for issue certification under Rule 23(c)(4).

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### NEGLIGENCE

60. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

61. This Claim is brought under New York law.

62. Defendants knew or should have known the release of PFOA-containing waste into the environment was potentially hazardous to human health and required Defendants to take adequate safety precautions to ensure that PFOA was not released into the surrounding environment.

63. Defendants further knew or should have known it was unsafe and/or unreasonably dangerous to wash out and/or discharge filters or trays containing PFOA without taking precautions to prevent PFOA to be released into the environment at the McCaffrey Street

Facility.

64. Defendants further knew or should have known it was unsafe and/or unreasonably dangerous to wash out and/or discharge into the environment the residue from the manufacturing ovens and their stacks that contained PFOA.

65. Defendants had a duty to take all reasonable measures to ensure PFOA-containing waste would be effectively disposed of and not discharged into the surrounding environment.

66. Defendants further had a duty to ensure the manufacturing processes they chose to employ did not unreasonably endanger the drinking water relied upon by residents of Hoosick Falls and the surrounding area.

67. Defendants breached the above-stated duties by unreasonably releasing PFOA-containing waste into the environment and contaminating the groundwater underlying the McCaffrey Street Facility.

68. Defendants were negligent, grossly negligent, reckless, and acted with utter disregard for the health and safety of Plaintiff, Infant Plaintiff, and the Subclasses in releasing PFOA-containing waste into the environment and contaminating the Village Water Supply with unsafe levels of PFOA.

69. These unsafe levels of PFOA in their drinking water have deprived Plaintiff and the Subclasses of potable water and reduced class members' property values.

70. These unsafe levels of PFOA in their drinking water have caused Plaintiff, Infant Plaintiff, and the Subclasses to suffer injury and damage at the cellular and genetic level by the accumulation of PFOA in their bodies.

71. As a direct and proximate result of Defendants' actions and omissions

described herein, Plaintiff, Infant Plaintiff, and the Subclasses have suffered and continue to suffer damages, including personal injury due to the accumulation of PFOA in their bodies, the loss of property value; monetary damages associated with the investigation, treatment, remediation, and monitoring of drinking water and the contamination of their respective property; as well as compensatory and consequential damages set forth below.

## SECOND CLAIM FOR RELIEF

### Strict Liability for Abnormally Dangerous Activity

72. Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

73. Defendants' manufacturing processes and negligent, reckless, and/or intentional handling of PFOA Solution constituted an abnormally dangerous activity for which Defendants are strictly liable.

74. Defendants' use and disposal of PFOA-containing waste as described herein, was inappropriate, unreasonable, and unsafe in light of the dangers of PFOA and the proximity of the Village Water System's production wells to the McCaffrey Street Facility where the PFOA-containing waste was discharged.

75. Furthermore, Defendants' use and disposal of PFOA-containing waste, and reckless disregard for the consequences of those actions, carried a high degree of risk of harm to others and a high likelihood that any such harm would be great and has led to the recommendation that the Village of Hoosick Falls be named as a Superfund Site.

76. As a result of Defendants' abnormally dangerous activities, Plaintiff and the Property Damage Subclass members have suffered harm to their property and have been forced to mitigate damages as set forth herein, as well as below.

## DAMAGES SOUGHT BY THE CLASS

77. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

78. Plaintiff and the First Subclass have sustained and will continue to sustain damages to their property as a result of Defendants' actions. As a result, Plaintiff and the First Subclass seek monetary damages for each violation of the First and Second Claims for Relief. In particular, Plaintiff and the Subclasses seek: (i) monetary damages to compensate class members for the diminution in value of their property caused by Defendants' conduct and (ii) consequential damages sufficient to fund a medical monitoring program that is reasonably tailored to the risks posed by the accumulation of PFOA inside Plaintiff's' and subclass members' bodies.

79. Infant Plaintiff and the Second Subclass seek consequential damages sufficient to fund a medical monitoring program that is reasonably tailored to the risks posed by the accumulation of PFOA inside Infant Plaintiff's and subclass members' bodies.

80. Further, because Defendants' acts were done maliciously, oppressively, deliberately, and in reckless disregard of rights, health and safety of Plaintiff, Infant Plaintiff, and the Subclasses, Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

81. In addition to the above, Plaintiff, Infant Plaintiff, and the Subclasses seek injunctive relief including, but not limited the establishment of a medical testing protocol for Class Members to monitor their health and diagnose at an early stage any illnesses or conditions associated with exposure, inhalation, or ingestion of PFOA; and to take additional steps, to be proven at trial, that are determined necessary to remediate all class

members' properties and/or residences to eliminate the presence of PFOA.

### **PRAYER FOR RELIEF**

Plaintiff, and Infant Plaintiff, individually, and all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

A. An order certifying the proposed Village Water Property Damage Subclass and the PFOA Accumulation Injury Subclass, designating Plaintiff as the named representative of the respective Subclasses, and designating the undersigned as Class Counsel;

B. A declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiff and members of the Property Damage Subclass;

C. An order requiring Defendants: (i) to establish a medical monitoring and surveillance protocol for Plaintiff, Infant Plaintiff, and Subclass members to monitor their health and diagnose at an early stage any ailments associated with exposure, inhalation or ingestion of PFOA, and (ii) to take all necessary steps to remediate the property and/or residences of Plaintiff and the Subclasses to eliminate the presence of PFOA;

D. An award to Plaintiff, Infant Plaintiff, and Subclass members of compensatory, exemplary, and consequential damages, including interest, in an amount to be proven at trial;

E. An award of attorneys' fees and costs, as permitted by law;

F. An award of pre-judgment and post-judgment interest, as provided by law;

G. Leave to amend this Complaint to conform to the evidence produced at trial; and

H. Such other relief as may be appropriate under the circumstances and/or permitted by law or as the Court deems just and proper.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury of any and all issues in this action so triable as of right.

Dated: April 6, 2016
Rochester, New York

                               Respectfully submitted,

                               */s/Stephen G. Schwarz*
                               Stephen G. Schwarz (NDNY #103484)
                               sschwarz@faraci.com
                               Hadley L. Matarazzo (NDNY #437785)
                               hmatarazzo@faraci.com
                               **FARACI LANGE, LLP**
                               28 E. Main Street, Suite 1100
                               Rochester, NY 14614
                               Telephone: (585) 325-5150
                               Facsimile: (585) 325-3285

                               **WILLIAMS, CUKER & BEREZOFSKY, LLC**
                               Gerald J. Williams (*Pro hac* forthcoming)
                               gwilliams@wcblegal.com
                               Esther E. Berezofsky (*Pro hac* forthcoming)
                               eberezofsky@wcblegal.com
                               Michael J. Quirk (*Pro hac* forthcoming)
                               mquirk@wcblegal.com
                               1515 Market Street, Suite 1300
                               Philadelphia, PA 19102
                               Telephone: (215) 557-0099
                               Facsimile: (215) 557-0673

                               **CHAFFIN LUHANA LLP**
                               Eric Chaffin (NDNY #515598)
                               chaffin@chaffinluhana.com
                               Roopal P. Luhana (*Pro hac* forthcoming)
                               luhana@chaffinluhana.com
                               600 Third Ave., 12th Floor
                               New York, NY 10016
                               Telephone: (888) 480-1123
                               Facsimile: (888) 317-2311

                               *Attorneys for Plaintiff and Proposed Class*